HENRY E. FRANKENBERG CO. v. UNITED STATES.

(Circuit Court, S. D. New York. June 1, 1905.)

No. 3,770.

CUSTOMS DUTIES—CLASSIFICATION—BEADS STRUNG.
      The provision in Tariff Act July 24, 1897, c. 11, Schedule N. § 1, par. 408, 30 Stat. 189 [ U. S. Comp. St. 1901, p. 1673], for "beads of all kinds, not threaded or strung," does not include beads strung or threaded temporarily.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 5,878 (T. D. 25,891), which affirmed the assessment of duty by the collector of customs at the port of New York. The case involves the construction of the provision in Tariff Act July 24, 1897, c. 11, Schedule N, § 1, par. 408, 30 Stat. 189 [U. S. Comp. St. 1901, p. 1673], for "beads of all kinds, not threaded or strung."

The opinion filed by the board reads as follows:

SHARRETTS, General Appraiser. The issue raised by these protests involves the classification and rate of duty applicable to metal beads strung on cotton cords. The importers contend that such merchandise is dutiable at the rate of 35 per cent. ad valorem, under the provision of paragraph 408, Act July 24, 1897. The collector assessed duty on the goods at 45 per cent. ad valorem under paragraph 193, Schedule C, § 1, 30 Stat. 167 [U. S. Comp. St. 1901,

p. 1645], as manufactures composed wholly or in part of metal. In G. A. 5,677 (T. D. 25,291) the Board after duly considering the evidence of two of the largest importers of beads in the United States, which evidence is made a part of the record in the present cases, decided adversely to the importers' contention; the issue then and now being identical. Since the rendition of that decision the Circuit Court of Appeals for the Seventh Circuit has affirmed the Circuit Court for the Northern District of Illinois, in the case of Buettner v. U. S. (C. C. A.) 133 Fed. 163, holding that beads strung on cotton cord were dutiable under paragraph 408, as beads unstrung. Judge Grosscup, who delivered the opinion of the court, in discussing clauses A and B of paragraph 408 of the present act, reached the conclusion that: "The difference in duty— in the one 35 per cent. ad valorem, and in the other 60 per cent.—was intended undoubtedly as a differential in favor of domestic manufacturers of such fabrics. The clause as we interpret it [referring to clause A], in view of the clause that follows, has application not to beads temporarily strung or threaded for purposes of transportation, but beads permanently threaded or strung as beads are threaded or strung in the manufacture of fabrics, nets, wearing apparel, and the like. In the interpretation of the statutes, the letter must yield to the substance of the distinctions intended to be expressed, and it is our judgment that the classification here intended was between metal beads constituting permanently a part of a fabric or article and beads that in their individual state may be worked into such manufactures."

While not concurring in these conclusions, though we recognize the force of the argument advanced by the court, we nevertheless would feel constrained to follow this decision, were it not that another tribunal of equal jurisdiction had taken a contrary view. The case referred to is that of Steiner v. U. S., 79 Fed. 1003, 24 C. C. A. 690, decided by the Circuit Court of Appeals for the Second Circuit. There are some cogent facts which persuade us that this latter decision should be followed in this instance. It is not disputed that the merchandise in question is strung beads, and we find as a fact within our knowledge that the importation, the subject of the conflicting decisions above referred to, was of similar description and strung in identically the same manner. The only point with which we have to deal, therefore, is the dictum of the court in the Buettner Case that beads temporarily strung were not of the description of beads Congress intended to exclude from classification under subdivision A, par. 408. The court in this last mentioned case suggested an intent on the part of Congress to give certain advantages to domestic manufacturers of beaded goods. This proposition can hardly be refuted, but the whole scheme in the present tariff evinces a determination on the part of Congress to differentiate between crude materials which have not been advanced in value by the application of labor abroad, and those which have. Instances of this are found in section 1, Schedules I and L, pars. 303, 385, 30 Stat. 175, 185 [U. S. Comp. St. 1901, pp. 1656, 1668], covering threads or yarns which partake of the nature of raw materials for weavers, but which, having been advanced in value and condition by process of labor, are made dutiable at comparatively high rates. Paragraphs 20 and 435, Schedules A and N, 30 Stat. 152, 192 [U. S. Comp. St. 1901, pp. 1628, 1676], are among other numerous instances showing the same intent.

The testimony of large importers of beads whose interests were in the direction of seeing a reduction of duties, and one of whom is a protestant in the cases now before us, was to the effect that beads strung on cotton cords for temporary purposes were known, and had been known in trade for a period of 30 years, as strung beads, and, further, that the labor of assorting and stringing beads added 15 to 20 per cent. to the value of loose beads. Can we not conclude that this fact was the potent cause which induced Congress to eliminate strung beads from paragraph 408 entirely, the rate of 35 per cent., chargeable on the loose beads, being regarded as too low for those enhanced in value 15 per cent. by a process of labor abroad, and that of 60 per cent., the rate chargeable on trimmings and completed articles, as too high? The effect of eliminating strung beads from paragraph 408 does not lead to an incongruous condition, but on the major part of imported beads strung the result would be the imposition of duty at a rate 10 per cent. higher than on beads

144 F.—45

not strung, and 15 per cent. lower than for the beaded goods. Assuming for argument's sake, and the assumption is not unreasonable, that the labor of assorting and stringing beads was performed in this country by women and children, it could plausibly be concluded that Congress by legislation secured to them a fair degree of protection. If we are to decide the case within the intent of Congress, it will be well to turn to prior tariff acts, with a view to ascertaining what the legislative intent was.

Act Oct. 1, 1890, c. 1244, § 1, Schedule N, par. 445, 26 Stat. 600, provided for beads, loose, unthreaded, and unstrung; and an importation of metal beads temporarily strung on cotton cords, entered at the port of New York during the life of that act, was excluded from classification as beads, loose. This importation was returned for duty by the collector as a manufacture of metal; duty being assessed thereon at the rate of 45 per cent. ad valorem. The correctness of this interpretation of the statutes was successively affirmed by the Board of General Appraisers, the Circuit Court for the Southern District of New York, and the Circuit Court of Appeals for the Second Circuit. See G. A. 876 (T. D. 11,885) ; (C. C.) 66 Fed. 726 ; 79 Fed. 1003, 24 C. C. A. 690. The decision of the Circuit Court of Appeals was regarded as final by the government and importers, and was adhered to and acquiesced in until paragraph 445 of the act of 1890 was repealed by the act of 1894.

Congress, in framing Tariff Act August 27, 1894, c. 349, 28 Stat. 509. did so with the avowed purpose of reducing duties on crude materials. Having knowledge that by judicial decision temporarily strung beads were classifiable according to material, under the act of 1890, paragraph 99, Schedule B, § 1, Act 1894, 28 Stat. 514, provided for "glass beads, loose, strung or carded." at the rate of 10 per cent. ad valorem. Had it not been that beads strung temporarily were regarded as not included within the term "loose," no necessity would have existed for incorporating the words "strung or carded," as the term "glass beads," without other qualifying words, would have included those loose and also such as were strung or carded for purposes of convenience of transportation. Briefly summarizing the provisions of this paragraph, we find included therein (1) loose beads, (2) beads · strung, and (3) beads carded ; that is, threaded and attached to cards solely for purposes of convenience or transportation.

The value of beads in the condition specified increased in the order of their enumeration, and, as paragraph 354 of the same act (28 Stat. 536) provided for articles manufactured from beads, the intent of Congress to include beads temporarily strung within the term "beads strung" is so manifest as to be hardly a debatable question. It is well worthy of consideration that paragraph 99 made provision only for glass beads, and that metal beads strung on cotton cords were relegated for duty to the paragraph which provided for manufactures of metal, under the act of 1894, as they had been classified by judicial decision, under the act of 1890. Hence, during two tariff acts, from 1890 down to 1897, metal beads temporarily strung on cotton cords were classified as manufactures of metal.

In the act of July 24, 1897, c. 11, § 1, Schedule A. 30 Stat. 151 [U. S. Comp. St. 1901, p. 1626], Congress repealed paragraph 99 of the act of 1894, and reenacted the provision of paragraph 445 of the act of 1890, in identical language with regard to beads of all kinds not threaded or strung. This was done with the full understanding relative to the class of goods included in the provision of the act of 1894 for loose beads, and also that by decisions by the courts and in accordance with the practice followed by customs officials and acquiesced in by importers for years, all beads—strung or threaded in any manner—were dutiable at the rate applicable to the material of which they were composed. In our opinion, the intent of Congress was expressed in unambiguous language, and that, both within the letter of the law and the intent of the lawmakers, only loose beads were provided for in paragraph 408 at 35 per cent. ad valorem.

In accordance with the views herein expressed, the protests before us are overruled, and the collector's decision in assessing duty on the metal · beads strung now in controversy. at the rate of 45 per cent. ad valorem, under paragraph 193 of the present act, in each case is affirmed.

Frederick W. Brooks, for importers.
Charles Duane Baker, Asst. U. S. Atty.

TOWNSEND, Circuit Judge. The decision of the Board of General Appraisers is affirmed, upon the decision in this circuit in Re Steiner (C. C.) 66 Fed. 726, affirmed in 79 Fed. 1003, 24 C. C. A. 690.