## UNITED STATES *v.* MORRISON.
## UNITED STATES *v.* WOLFF.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 15, 16. Argued December 12, 1899.—Decided December 17, 1900.

These cases are concerned with the classification of certain articles imported by the respondents under the tariff act of 1890. Those imported by E. A. Morrison & Son were variously colored in imitation of " cat's eyes " or " tiger's eyes," and were strung. Others were colored in resemblance to the garnet, aqua marine, moonstone and topaz. Those imported by Wolff & Co. were in imitation of pearls, it is claimed, and were also strung. The contention is as to how they shall be classified or made dutiable—whether under paragraph 108 or under paragraph 454 of the act of 1890.

*Held,* that if the act of 1890 did not as specifically provide for beads as prior acts, glass beads as such were in the legislative mind and their various conditions contemplated. It was impossible to have in contemplation glass beads, loose, unthreaded and unstrung (445), and not have the exact opposite in contemplation—beads not loose, beads threaded and strung, and made provision for them. What provision ? Were they to be dutiable at the same or at a higher rate than beads unthreaded or

unstrung? If at the same rate—if *all* beads were to be dutiable at the same rate, why have qualified any of them? Were some to be dutiable at one rate and some at another rate? If made of plain glass, were they to be dutiable at sixty per centum under paragraph 108; if tinted or made to the color of some precious stone, were they to be dutiable at ten per centum under paragraph 454? No reason is assigned for such discrimination, and we are not disposed to infer it. It is a more reasonable inference that beads threaded of all kinds were intended to be dutiable at a higher rate than beads unthreaded, and if there can be a choice of provisions that intention must determine. Indeed, admitting that either provision (paragraph 108 or paragraph 454) equally applied, the statute prescribed the rule to be that " if two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates."

THE case is stated in the opinion of the court.

*Mr. Assistant Attorney General Hoyt* for the United States.

*Mr. Albert Comstock* for Morrison and for Wolff.

MR. JUSTICE McKENNA delivered the opinion of the court.

These cases are concerned with the classification of certain articles imported by the respondents under the tariff act of 1890. Those imported by E. A. Morrison & Son were variously colored in imitation of " cat's eyes " or " tiger's eyes," and were strung. Others were colored in resemblance to the garnet, aqua marine, moonstone and topaz. Those imported by Wolff & Co. were in imitation of pearls, it is claimed, and were also strung. The contention is as to how they shall be classified or made dutiable — whether under paragraph 108 or under paragraph 454 of the act of October 1, 1890, c. 1244, 26 Stat. 567.

Paragraph 108 provides:

" Thin blown glass, blown with or without a mold, including glass chimneys and all other manufactures of glass, or of which glass shall be the component material of chief value, not specially provided for in this act, sixty per centum ad valorem."

Paragraph 454 provides:

" Precious stones of all kinds, cut but not set, ten per centum ad valorem; if set, and not specially provided for in this act,

twenty-five per centum ad valorem. Imitations of precious stones composed of paste or glass not exceeding one inch in dimensions, not set, ten per centum ad valorem."

The board of appraisers decided that the merchandise was dutiable under paragraph 108, at sixty per cent. The decision was affirmed by the Circuit Court. 84 Fed. Rep. 444. The Circuit Court was reversed by the Circuit Court of Appeals on the appeal of the respondents. 55 U. S. App. 406. The cases are here on certiorari.

There was a dispute between counsel whether the articles represented by Exhibit 3 were involved in the pending appeal. That dispute seems to be settled by the concession of counsel for the United States that they are. At any rate, we do not consider the dispute important. We shall assume that all the articles are beads strung. The opinions of the Circuit Court and the Circuit Court of Appeals dealt with beads strung and their classification, and the same questions involved are here for consideration. At the taking of the testimony counsel for respondents made as to Exhibit 2 (so-called "cat's eyes") the following concession:

"The importer concedes that they were imported upon strings, and that the claim that they were entitled to entry as beads, loose, unthreaded or unstrung, is not insisted on."

And in the Court of Appeals it was stipulated among things (the stipulation is a part of the record here) "that the merchandise herein involved was in fact beads, and was in fact threaded or strung at the time of its importation, and was thereby excluded from classification under paragraph 445, act of October 1, 1890, and that unless this court shall hold that it was dutiable under paragraph 454 of the said act, as imitations of precious stones, etc., it was properly classified by the collector of customs under paragraph 108 of the said act as manufactures of glass not specially provided for."

We have therefore only to consider whether the merchandise represented by all of the exhibits was or was not imitations of precious stones. In passing upon and determining these alternatives, we do not consider it necessary to detail the testimony of the witnesses. If we should regard it literally, and concede,

that though conflicting, it preponderates in favor of the view that the articles imported were known in trade as imitations of precious stones, we do not consider that that alone should determine our judgment. If the testimony shows the articles to be imitations of precious stones, it also shows them to be beads, and it is stipulated that they were " in fact beads," and were " in fact threaded or strung " at the time of their importation. If they are entitled to a double designation, how are they to be classified? The answer would be easy and ready under prior tariff acts.

From an early day up to and including the act of 1883 beads had separate classification, and were dutiable at a higher rate than precious stones or imitations of them. Precious stones set and unset; imitations of them set or unset, and compositions of glass or paste when not set, were separately mentioned, and bore a different rate of duty from beads, and were not confounded with beads by resemblances, indeed not always by identity of material.

As early as 1858 the Treasury Department decided that genuine pearls, when imported strung on a thread to be used as beads for necklaces without further manufacture, were dutiable as beads. And later jet and coral necklaces were classed as beads and bead ornaments. Also glass balls and oval pieces of onyx, and pieces of glass or paste capable of being strung, were held to be beads against a claim of being imitations of precious stones.

A summary of the acts may be useful. In the act of 1832, under the description of " composition, wax or amber beads; all other beads, not otherwise enumerated," they were made dutiable at fifteen per cent ad valorem. In the act of 1842 they were dutiable at twenty-five per cent. In that of 1846 the description was " beads of amber, composition or wax, and all other beads, thirty per cent ad valorem." The description and duty were the same in the act of 1861. In the statutes enacted between 1861 and the Revised Statutes, beads or imitations of precious stones are not specifically mentioned. In the Revised Statutes beads specifically reappear, and were classified " all beads and bead ornaments except amber : fifty per cent

ad valorem." In the act of 1883 the classification was "beads and bead ornaments of all kinds except amber, fifty per cent ad valorem."

The act of 1890, which is now under consideration, does not contain in all respects the specific classification of the prior acts. The only classification of beads by name is in paragraph 445, which provides "that glass beads, loose, unthreaded or unstrung," shall be dutiable at ten per cent ad valorem. The opposite condition—beads not loose, not threaded or strung—is not specifically mentioned.

It cannot be said they ceased to exist with the passage of the act of 1890 or were unprovided for by it. They necessarily must be classified some other way than by name; but do they thereby lose their distinction, and, while they are "in fact beads threaded and strung at the time of importation," do they cease to be that for lower duties by being made to resemble something else—to make the application to the pending case, to resemble some precious stone? That its purpose was to impose lower duties cannot be said of the act of 1890, nor can it be contended that such result was attained by any change of its provisions in regard to precious stones or their imitations.

In prior acts the rates on beads were higher than the rates on precious stones or imitations of them. Precious stones bore no higher rate than ten per cent ad valorem. They, however, were not specifically mentioned in all acts. They were mentioned in the act of 1816, and were dutiable at seven and one half per cent. They were mentioned in the act of 1842, and were dutiable at ten per cent. Imitations were dutiable at the same rate. The description was on "gems, pearls or precious stones seven per centum ad valorem; on imitations thereof, and compositions of glass or paste . . . . set or not set, seven and a half per centum ad valorem." There was no specific enumeration in the act of 1861 of precious stones or imitations of them, nor of the latter in any act until the publication of the Revised Statutes, where they appear as follows: "Precious stones and jewelry—diamonds, cameos, mosaics, gems, pearls, rubies, and other precious stones, when not set, ten per centum ad valorem;

when set in gold, silver, or other metal, or on imitations thereof and all other jewelry—twenty-five per centum ad valorem."

In the act of 1883 precious stones not set bore a duty of ten per cent. Imitations of precious stones were not specifically mentioned. They came under the provision for compositions of glass or paste, not set, and were dutiable at ten per cent. If set (and precious stones if set), were classified as jewelry, and were subject to a duty of twenty-five per cent.

In the act of 1890 pearls are not grouped, as in some prior acts, with the diamond and ruby as precious stones. They have a separate classification, and are dutiable, if not set, at ten per cent. Precious stones are more carefully distinguished than under the act of 1883. The provision for them is as follows:

454. Precious stones of all kinds, cut, but not set, ten per centum ad valorem; if set, and not specially provided for in this act, twenty-five per centum ad valorem.

Imitations of precious stones composed of paste or glass, not exceeding one inch in dimensions, not set, ten per centum ad valorem.

If set, they seem to become jewelry under paragraph 452, and dutiable at fifty per centum ad valorem.

From this review it is evident that in prior tariff acts beads were classified separately from imitations of precious stones, and were regarded as distinct from them and dutiable at a much higher rate. Can it be said that the act of 1890 suddenly changed a purpose so constant throughout previous legislation, and did not express the change but left it to be inferred from indefinite and ambiguous provisions—provisions which had not had that effect nor were intended to have that effect? We think not.

If it be said they were only precluded from that effect by the specific provisions for beads and that such provisions are not in the act of 1890, the answer is twofold (1) that there is provision which applies to and embraces them. They are undoubtedly "glass and manufactures of glass," and the adequacy of that description, which is the description of paragraph 108, to include them cannot be denied. An imitation of a precious stone may be a manufacture of glass, but the latter is not nec-

essarily an imitation of a precious stone, or, more narrowly, an imitation of a precious stone within the meaning of a tariff statute. Every resemblance would not make such imitation, and the suggestion of the counsel for the United States is not without its weight, that the capability and purpose of setting must be considered. The condition seems to have been contemplated by the statute, and in the testimony for the importers there was an attempt to satisfy it. Witnesses testified that while the articles were beads, they could be set and sometimes were set. Undoubtedly they could be fixed in metal, and so arranged as to conceal their perforations, but that was not their purpose or use. Their purpose and use were for hat or dress trimmings, or to ornament embroideries. It may be that in construing a tariff act it is the essential nature of the article, not the purpose of the importer, which determines its classification; but if color may be regarded to bring the article to the resemblance of a precious stone its other conditions may be regarded to bring it to the character of a bead—a manufacture of glass, a mere hat or dress trimming, or an ornament for embroidery.

(2) If the act of 1890 did not as specifically provide for beads as prior acts, glass beads as such were in the legislative mind and their various conditions contemplated. It was impossible to have in contemplation glass beads, loose, unthreaded and unstrung (445), and not have the exact opposite in contemplation —beads not loose, beads threaded and strung, and made provision for them. What provision? Were they to be dutiable at the same or at a higher rate than beads unthreaded or unstrung? If at the same rate—if *all* beads were to be dutiable at the same rate, why have qualified any of them? Were some to be dutiable at one rate and some at another rate? If made of plain glass, were they to be dutiable at sixty per centum under paragraph 108; if tinted or made to the color of some precious stone, were they to be dutiable at ten per centum under paragraph 454? No reason is assigned for such discrimination, and we are not disposed to infer it. It is a more reasonable inference that beads threaded of all kinds were intended to be dutiable at a higher rate than beads unthreaded, and if there can be a choice of provisions that intention must determine. Indeed, admitting

that either provision (paragraph 108 or paragraph 454) equally applied, the statute prescribed the rule to be that "if two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates." Section 5.

*The judgment of the Circuit Court of Appeals is reversed, and that of the Circuit Court is affirmed.*

MR. JUSTICE PECKHAM dissented.